# Vilsack's Estate.

*Will—Construction—Advancements.*

Testator divided the residue of his estate into shares and gave to each of his children a share, but directed as to one son that one-half of the share should be given to the son absolutely, and the other half should be held by his executors for such son during his life with remainder over to his surviving children. Testator's books showed certain advances of money to this son. Certain notes of the son which the testator had indorsed and subsequently paid were not shown by the

books, but appeared amongst testator's records by means of a card system. By his will testator directed as follows: "I have heretofore given to several of my sons and daughters certain sums of money, and I will probably give further sums to them, and to others of my sons and daughters. Now I direct that all such sums of money as shall be noted in my books shall be taken into account before making any allotment, assignment or conveyance of any part of my estate, and said advancements, charged and adjusted by my said executors and the survivors and survivor of them, in such manner as to make an equal division of my said trust estate, so far as relates to said advancements, among all my sons and daughters per stirpes." *Held*, (1) that the notes shown by the card system were advancements within the meaning of the will; (2) that the whole of the advancements to the son should be deducted from his whole share, and not merely from the one-half given to him absolutely.

Argued Oct. 22, 1909. Appeal, No. 143, Oct. T., 1909, by Commonwealth Trust Company of Pittsburg, from decree of O. C. Allegheny Co., March T., 1909, No. 150, dismissing exceptions to adjudication in Estate of Leopold Vilsack, deceased. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

MILLER, J., filed the following opinion:

The questions in this case are:

(a) Whether notes indorsed by decedent for his son and paid by the estate are advancements, or charges against his distributive share; and

(b) Whether a devise absolutely to the son of one-half of his share, and the direction that the remaining half shall be held in trust for him, involves the charge of the advancements against the whole or half of the share.

Leopold Vilsack died December 26, 1907, leaving twelve children. His will is dated August 10, 1907; his wife having died prior, his entire estate is disposed of in the fifth clause, each child to have one-twelfth; a trust is created, which after specifically directing his trustees to have the full management and control of his estate, he directs that they shall apportion, allot, assign and convey to his surviving children as they at-

tain the age of thirty, his or her aliquot part or share of said trust estate absolutely and in fee simple, "except to my son Leopold W. Vilsack, whose aliquot part or share shall be distributed as hereinafter provided."

By the sixth clause the direction is that one-half of the aliquot part or share of his son Leopold shall be conveyed to said son and that the other one-half shall be held in trust by his executors for his said son during his life, the income thereof to be paid to him and at his death said one-half so apportioned and allotted shall be conveyed to his surviving children, share and share alike.

By the seventh clause he directs that the manner of effecting and equalizing his trust property shall be by apportionment, allotment or conveyance through and by his trustees, giving them absolute discretion and power with respect thereto.

In the ninth clause testator uses the following language: "I have heretofore given to several of my sons and daughters certain sums of money, and I will probably give further sums to them, and to others of my sons and daughters. Now I direct that all such sums of money as shall be noted in my books shall be taken into account before making any allotment, assignment or conveyance of any part of my estate, and said advancements, charged and adjusted by my said executors and the survivors and survivor of them, in such manner as to make an equal division of my said trust estate, so far as relates to said advancements, among all my sons and daughters per stirpes."

Upon the decedent's books is the assertion that certain sums were advanced to his children as follows: "The foregoing entries on pages 203 and 204 represent the amounts advanced each of my children to this date, August 1st, 1907." This is signed by him and witnessed; there appears a charge, inter alia, against Leopold W. Vilsack of $23,500. At the time of testator's death he had indorsed or held notes of this son Leopold, to the extent of $53,500. All these indorsements have been paid by the executors or trustees, and the notes are charged against his share. In addition the testator held a mortgage for $12,000 against this son. No interest was charged

on the advancement of $23,500; but interest was paid by the son upon the notes, and also upon the mortgage, up to and since the father's death.

These notes for which the testator was liable appear amongst his records by means of a card system, which shows the parties to the notes, the amount thereof, and the time when payable.

Testator frequently stated to his son and to Jos. G. Vilsack, and it was so understood by him, that any indorsements or loans or debts owing by this son or any of his children unpaid, should be taken from the distributive share when that period arrived. The total amount charged by the executors and trustees against the share of Leopold W. Vilsack which includes the foregoing distinct advancements, the notes and the mortgage, is $89,000.

A guardian ad litem was properly appointed to represent the interest of Leopold W. Vilsack's children, whose contention is that:

(a) Only the $23,500 are advancements, and

(b) That the whole of this advancement and the notes and mortgages which are mere evidences of indebtedness must be taken from the half of his share to be allotted to him directly.

The language of the will, empowering the executors to make the allotment of each child's share, coupled with the direction to charge and adjust the advancements, is indicative of the discretion in them to charge against Leopold W. Vilsack's share the whole of his indebtedness, as they have done.

At the time the testator made note of the several advancements as charged in his book, he had not paid the indorsements, nor charged up the personal notes and the mortgage against this particular share; but he said in his will that he may "give further sums to them. . . . All such sums of money as shall be noted in my books shall be taken into account before making any allotment."

The record of the indorsed notes kept by the card system, and the personal notes and mortgage are all written evidence of sums of money formerly given to, or for this son, and evidence of further sums to be given. When testator spoke of

books he did not limit charges to any one book, or any particular kind of books; the card system of keeping record of the notes is another form of entering them into a regular book; the mortgage and the personal notes certainly do not need any further evidence by record in books; these existing as found, coupled with the language of the will, and especially with testator's oral declarations to L. W. Vilsack and to Jos. G. Vilsack that all the money which he had received, or for which his father was liable himself, be taken from his share, establishes clearly the intent to charge all manner of indebtedness against each child's share, otherwise no equal division was possible.

The clear intent of the will being that each child's indebtedness or advancements shall be adjusted as against his or her whole share of the estate, rebuts the contention that it should be charged only against the one-half share.

Granted that the notes and mortgage represented business transactions between this son and his father, whereby the son was the father's debtor, how can equality of distribution be adjusted if the debt is not deducted from the share? There is no trust estate until the indebtedness of the son is deducted from his share; only one-half of what is left constitutes the trust. Suppose this son's indebtedness and advancements should exceed his entire one-half of the absolute estate given to him, how would equality be attained, if the debt or advancements could only be collected from the one-half and the residue remain uncollected because protected by the trust?

In Wainwright's Est., 37 Legal Int. 104, a similar direction was held as authority for the deduction from a child's share of all he owed to his father's estate before a fund arose which constituted the trust.

The whole of the one-twelfth of this estate constitutes Leopold W. Vilsack's share; one-half to him absolutely; the income of the other one-half for life. There is no devise of one-half of one-twelfth to him as his share of testator's estate; he being the primary object of testator's bounty is entitled to the full benefit of the share, part absolutely and part by income, after deducting from his share what he has already

received; this must be deducted from his whole share as devised and not from a part thereof.

*Error assigned* was in dismissing exceptions to adjudication.

*George H. Stengel,* for appellant.

*Wm. A. Stone,* of *Stone & Stone,* for appellee.

PER CURIAM, January 3, 1910:

The majority of the court are of opinion that the decree appealed from should be affirmed for the reasons stated in the opinion of the orphans' court.